(Frauenfelt's Estate.)

----

[PHILADELPHIA, APRIL 9, 1838.]

## FRAUENFELT'S ESTATE.

### APPEAL.

1. Executors cannot apply a legacy given to a wife, to the payment of a debt due by her husband to a stranger, without the authority or assent of the husband.
2. Where the executors of a testator paid off a bond given by the husband of a legatee, without having been requested to do so by the obligor, it was *held,* that they were not entitled to a credit for the amount, on the settlement of their accounts, although the obligor afterwards got possession of the bond, and refused to return it to the executors.

THIS was an appeal from the decree of the Orphans' Court of Northampton County, on the settlement of the accounts of Jacob Frauenfelt and Conrad Frauenfelt, executors of the will of Jacob Frauenfelt, deceased.

*In the Court below, the accounts of the executors [*416] were referred to an auditor, who reported that there was a balance in the hands of the executors of $1461 29, to be paid to the children of the testator, according to the directions of the will. One of the said children was Elizabeth, the wife of Jonathan Brown. In making distribution of the said balance, the

(Frauenfelt's Estate.)

auditor allowed the executors the following credit as a deduction from her share of the estate, viz.—

"1822, July 22nd.  Amount of John Brown's bond
    due to Beers paid to Peter Ihrie, Esq.      $255 85
Interest to 21st Dec. 1835                  205 96

                                       461 81"

Elizabeth Brown filed the following exception to the auditor's report.

"1st. That the said auditor erred in allowing the accountants credit for $461 81, the amount of the bond alleged to have been paid by them to Peter Ihrie, Esq. as a set-off against the share of Elizabeth Brown, late Frauenfelt, wife of Jonathan Brown, and one of the daughters and legatees of the said Jacob Frauenfelt, deceased.

2nd. That the auditor exceeded his authority in making such distribution; and in allowing the said accountants to set off against the share of the said Elizabeth Brown, a debt alleged to be due by her husband to the accountants individually, and not in their representative character.

3d. That the amount of the moneys paid by the accountants to Peter Ihrie, Esq., was not the subject of set-off, even against Jonathan Brown, much less against the said Elizabeth Brown."

On the argument of the exceptions, the deposition of the auditor was read; and was in substance as follows:

"The sum of $461 81 deducted from the share of Elizabeth, wife of Jonathan Brown, one of the legatees, was the believed amount of a bond given by the said Jonathan Brown to one George Beers, and by him assigned to George Ihrie, Esquire, to whom the same was paid by the said Jacob and Conrad Frauenfelt, by their note for the said sum of $255 85, calculated on by me as the principal in the said distribution, and which they have since discharged. There was no evidence before me that Jonathan Brown ever requested them to pay off the said bond or any thing to that effect: on the contrary the same was wholly denied. [*417] The bond was not before me, it being *alleged that the said Jonathan took the same from the said Jacob and Conrad, without paying therefor, and refuses to return it; of which belief I was, and therefore allowed the amount of it to the said executors. Both Jonathan Brown and Elizabeth his wife were opposed to the deduction, and denied that the same of right could be done. I made the calculation from the note given by Jacob and Conrad to George Ihrie, Esquire, thereto annexed.

(Frauenfelt's Estate.)

Brown denied the right of the accountants to pay his debts without his consent.   Jonathan Brown admitted he had the bond above referred to, and it was for them to account for the manner in which he got it; and contended that they had no right to take his wife's money to pay his debts.   Brown never alleged that he had paid the bond, but merely denied the right to take his wife's money or portion to pay his debts.   The executors of Jacob Frauenfelt alleged, that they went to the house of Jonathan Brown with the said bond given by the said Brown to George Beers, and assigned to George Ihrie, and had a receipt written for him, Brown, to sign, for the amount : that Brown took the bond, and walked off with it, and did not sign the receipt.   The receipt which they said they took with them was produced to me; it was in the hand-writing of Colonel Ihrie, and not signed.   They said, he might have stolen the bond. Jonathan was before me.   He said he had the bond; denied their right to take his wife's money to pay his debts.   He admitted that he had the bond, and had not paid for it.   He insisted upon it, that they had no right to take his wife's money to pay his debts.   He never said he had received the bond on account of his wife's portion."

The Orphans' Court dismissed the exception, and made a decree according to the report of the auditor; from which decree Elizabeth Brown appealed to this Court.

Mr. *Porter*, for the appellant, argued, that the executor had no right to pay off the bond of the husband of the legatee with the wife's legacy, against the will of both the husband and wife ; and that the fact of the husband having obtained possession of the bond under the circumstances mentioned by the auditor, did not amount to a reduction of the legacy into possession or to an agreement that it should be set off.   He cited *Lodge* v. *Hamilton*, (2 Serg. & Rawle, 493); *Wintercas* v. *Smith*, (4 Rawle, 182); *Dennison* v. *Nigh*, (2 Watts, 90) ; *Robinson* v. *Woelpper*, (1 Whart. Rep. 183); 1 Wms. on Executors, 555; *Bount* v. ———, (5 Ves. 515) ; *Smith* v. *Scudder*, (11 Serg. & Rawle, 325); *Sturgin* v. *Hannah*, (2 Nott & M'Cord, 147); *Gregory* v. *Marks*, (1 Randolph, 355); *Stanwood* v. *Stanwood*, (17 Mass. Rep. 57) ; *Warner's* v. *Estate*, (2 Whart. Rep. 301).   The fourty-eighth section of the act of 1832, relating to the Orphans' Court, declares that when, upon any proceedings in that Court, a sum of money shall be awarded for the *share or portion to [*418] which a married woman may be entitled, such money shall not be paid to her husband, until he shall have given security, to the satisfaction of the Court, that the amount thereof, or so much as the Court shall deem proper, shall be paid after

(Frauenfelt's Estate.)

his death to his wife. [KENNEDY, J.—That section obviously applies only to the case of a partition of her real estate, and a conversion of it into money; and not to the case of a legacy to the wife, or her distributive share of personal property.]

Mr. *Ihrie*, contra, cited *Yohe* v. *Barnet*, (1 Binn. 358); Clancy on Married Women, 110; *Carpenter* v. *Faustin*, (1 Salk. 115); *Bates* v. *Dandy*, (2 Atk. 206); *Coppin* v. ———, (2 Peere Wms. 497); *Siter* v. *Jordan*, (4 Rawle, 468); *Harlan's Case*, (5 Rawle, 323).

Mr. *Porter*, in reply, was stopped.

The opinion of the Court was delivered by

SERGEANT, J.—The question is, whether the Court below were right in allowing the executors a credit for the amount of the bond of Jonathan Brown, in favour of George Beers, assigned to George Ihrie, and paid by the executors to Ihrie. Had there been any evidence of authority or assent by Brown to this payment, or even a ratification of it after it was made, it might have been deemed a payment of so much on account of the legacy bequeathed to his wife. But there is not the least ground for alleging this: on the contrary, the evidence shows that he explicitly denied the authority of the executors, and condemned their proceedings. A debtor cannot, at his own will and pleasure, apply the money he owes, in payment of a debt due by his creditor, to a third person, without the assent of such creditor. The Court below seem to have thought, that the conduct of Brown, in withholding the bond from the executors, after refusing to comply with the terms on which it was delivered to him, was tantamount to a ratification of their act in paying off the bond. This conduct may have been very improper; but the executors had their remedy, by an action against him; and it is impossible to consider a positive denial of their authority, an explicit disclaimer of their acts, as an assent to those acts. It is directly the reverse. We are therefore of opinion, that the Court below were wrong in confirming the auditor's report and allowing this credit to the executors: and that the sum credited should be disallowed.

                                        Decree accordingly.

Cited by Counsel, 8 Watts & Sergeant, 118; 2 Barr, 470.